IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| JOHN R. MASON, | ) | Civil No.: 6:12-cv-01110-JE |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

    Richard F. McGinty
    McGinty & Belcher, PC
    P.O. Box 12806
    Salem, OR 97309

        Attorney for Plaintiff


    S. Amanda Marshall, U.S. Attorney
    Adrian L. Brown, Asst. U.S. Attorney
    1000 S.W. 3rd Avenue, Suite 600
    Portland, OR 97204-2902

FINDINGS AND RECOMMENDATION - 1

Daphne Banay
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900, M/S 901
Seattle, WA 98104

   Attorneys for Defendant

JELDERKS, Magistrate Judge:

Plaintiff John Mason brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his applications for Disability Income Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Social Security Act (the Act).  Plaintiff seeks an Order remanding the action to the Social Security Administration (the Agency) for an award of benefits.

For the reasons set out below, the Commissioner's decision should be remanded to the Agency for further proceedings.

## Procedural Background

Plaintiff filed applications for DIB and SSI on December 18, 2007, alleging that he had been disabled since April 15, 2003 because of heart disease, an injury to his lower back, and severe hearing loss.  Because he had been found not disabled as of July 21, 2006 based upon an earlier application for disability benefits, his alleged onset of disability date was  amended to July 22, 2006.

After his claims had been denied initially and on reconsideration, Plaintiff timely requested an administrative hearing.  On October 19, 2010, a hearing was held before Administrative Law Judge (ALJ) John Madden, Jr..   Plaintiff and Jeffrey Tittlefitz, a Vocational Expert (VE), testified at the hearing.

FINDINGS AND RECOMMENDATION - 2

In a decision filed on October 26, 2010, the ALJ found that Plaintiff was not disabled within the meaning of the Act. That decision became the final decision of the Commissioner on May 4, 2012, when the Appeals Council denied Plaintiff's request for review. In the present action, Plaintiff challenges that decision.

## Background

Plaintiff was born on July 7, 1958, and was 52 years old at the time of the ALJ's decision. After completing high school he studied auto body and paint at college for one year. Plaintiff has past relevant work experience as an auto parts puller.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA). A claimant engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. § 404.1520(b).

Step Two. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have such an impairment is not disabled. If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step Three. 20 C.F.R. § 404.1520(c).

Step Three.  Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration (SSA) regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.  A claimant who has such an impairment is disabled.  If the claimant's impairment does not meet or equal an impairment listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four.  20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the claimant is able to perform relevant work he or she has done in the past.  A claimant who can perform past relevant work is not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R. § 404.1520(e).

Step Five.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 C.F.R. § 404.1520(f)(1).

At Steps One through Four, the burden of proof is on the claimant. <u>Tackett</u>, 180 F.3d at 1098. At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. <u>Id.</u>

## Medical Record

Relevant parts of the medical record will be addressed in the discussion below.

## Testimony

### Plaintiff

Plaintiff testified as follows at the hearing.

In his most recent employment, which ended approximately 8 years before the hearing, Plaintiff had worked as a parts puller for an auto wrecking business.[1]

Plaintiff's disabling conditions include a ganglion cyst in his left wrist, impairments in his mid and lower back and left ankle, nerve pain related to the removal of a vein used in surgery following a heart attack, muscle spasms, and hearing loss. Plaintiff needs to shift position hourly to relieve pain when sitting, and episodic pain in Plaintiff's low back sometimes forces him to stay in bed for a week. Plaintiff slowly returns to a more normal level of activity after severe episodes of back pain. He had experienced two such episodes, one of which lasted a week and a half, during the year before the hearing. Mid and low back pain and neck pain make it difficult for Plaintiff to sleep.

---

[1] A Disability Report dated December 18, 2007 indicates that Plaintiff stopped working when his employer went out of business.

Plaintiff does not experience much pain in his left ankle, but has little strength in that joint. He suffered a heart attack several years earlier, and his heart now races if he exerts himself. Plaintiff takes medication to control his blood pressure and reduce cholesterol levels. Because of irregularities in his heart rhythms, Plaintiff has been told to avoid stimulants such as chocolate and coffee. Fumes such as those given off by laquer thinner cause problems with his heartbeat, and changes in the weather make his back a "little more temperamental."

Plaintiff can hear almost nothing without hearing aids. He has difficulty hearing some one-on-one conversations, but can often understand what is being said if he can both hear and watch the speaker's mouth. If he cannot see the speaker, he "may or may not" understand what is being said. Plaintiff cannot understand group conversations, and uses closed-captioning when watching television.

Plaintiff has problems with short-term memory, and has difficulty concentrating when he has back pain. He uses a cane when he has "bouts" with his back.

Plaintiff's physical condition affects his ability to work, because repeated movements cause him pain. He can lift a maximum of about 20 pounds if he is very careful, and will experience significant back pain for a week and a half if he is in the wrong position when he picks up objects such as a bag of groceries. He can walk approximately 6 to 8 blocks at the beginning of the day, but can stand and walk less later in the day. Plaintiff typically naps and rests during the day, and his sleep patterns at night vary. He needs to allow time for his pain medications to take effect before putting on his shoes in the morning.

Plaintiff is able to do his laundry and use a dishwasher. He does little cleaning. He used to enjoy activities such as riding dirt bikes and golfing, but can no longer engage in such physical activities.

**Lay Witness Statement**

Michael Mason, Plaintiff's brother, submitted a Third Party Function Report dated January 11, 2008. He stated that Plaintiff spends the day watching television, eating, doing laundry, occasionally washing dishes, and occasionally visiting friends. Michael Mason reported that Plaintiff needs to lie down periodically throughout the day because of back pain, and that Plaintiff's impairments make some personal care activities difficult. He stated that Plaintiff prepares simple meals that usually do not require cooking, does household chores occasionally, is able to walk short distances, drives, and shops for food two or three times per month. Michael Mason reported that Plaintiff can no longer work on automobiles or perform strenuous activities, has difficulty comprehending oral instructions, walks with a limp and occasionally uses crutches, and appears to be in pain much of the time.

**ALJ's Decision**

At the first step of his disability analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of his disability.

At the second step, the ALJ found that Plaintiff's status post laminectomy of the lumbar spine, status post myocardial infarction and coronary artery disease with stent, and profound hearing loss were severe impairments.

At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the listings, 20 C.F.R. Part 404, Subpart P., App.1.

The ALJ next assessed Plaintiff's residual functional capacity (RFC). He found that Plaintiff retained the capacity to perform light exertional level work, subject to the following

limitations: He can occasionally climb ladders, ropes, and scaffolds; stoop, kneel, crouch, and crawl; should avoid jobs that require normal hearing levels and work settings that could further damage his hearing; and cannot work in a setting that requires ongoing communication with coworkers and/or the public. In determining Plaintiff's RFC, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent they were inconsistent with this assessment.

Based upon the testimony of the VE, at the fourth step, the ALJ found that Plaintiff could not perform his past relevant work as an auto parts puller.

At the fifth step, the ALJ found that Plaintiff was not disabled because he could perform other jobs that existed in substantial numbers in the national economy. As examples of this work, the ALJ cited garment sorter, marker II, small parts assembler, and food assembler jobs.

## Standard of Review

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Claimants bear the initial burden of establishing disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record, DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991), and bears the burden of establishing that a claimant can perform "other work" at Step Five of the disability analysis process. Tackett, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.

42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

## Discussion

Plaintiff contends that the ALJ failed to provide adequate reasons for rejecting the opinions of an examining physician, failed to support his determination that Plaintiff and his brother were not wholly credible, and failed to properly resolve conflicts between the VE's testimony and the Dictionary of Occupational Titles.

1. **ALJ's Evaluation of Examining Physician's Opinion**

At the request of the Agency, Dr. Alexander Landfield examined Plaintiff. In a report dated May 10, 2008, Dr. Landfield reviewed Plaintiff's medical history and medications and assessed his residual functional capacity. He noted that Plaintiff's diagnoses included lumbar degenerative disc disease, sensorineural hearing loss, and coronary artery disease. In his review of Plaintiff's reported activities of daily living, he noted that Plaintiff told him that he worked on cars and worked in his garden.

Dr. Landfield opined that, during an 8 hour work day, Plaintiff could stand and walk 6 to 8 hours, with "reasonable breaks every two hours for five minutes to change positions." He opined that Plaintiff could sit for 8 hours during an 8 hour work day with "reasonable breaks

every five minutes to change positions." Dr. Landfield thought that Plaintiff could lift or carry 10 pounds frequently and 20 pounds occasionally, "limited by his degenerative disc disease in the lumbar spine." He opined that Plaintiff could bend, stoop, and crouch only rarely, and that there were no limits on his ability to reach, grasp, handle, finger, and feel. Dr. Landfield thought that Plaintiff "would be unable to talk on the telephone or work in a job where he was required to answer the telephone."

The ALJ briefly summarized Dr. Landfield's assessment, and gave his opinion "some weight as it is overall well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record."

As noted above, the ALJ found that Plaintiff retained the capacity to perform light exertional level work, subject to these limitations: He can occasionally climb ladders, ropes, and scaffolds; stoop, kneel, crouch, and crawl; should avoid jobs that require normal hearing levels and work settings that could further damage his hearing; and cannot work in a setting that requires ongoing communication with coworkers and/or the public. Plaintiff contends that the ALJ erred in failing to include limitations requiring "unlimited breaks" and restricting Plaintiff to bending only rarely. He asserts that the ALJ erred in restricting him to only occasional "stooping" and "crouching," though Dr. Landfield had opined that he could perform these activities "rarely." Plaintiff also argues that the ALJ erred in according only "some weight" to Dr. Landfield's opinion while concluding that the opinions of state agency non-examining medical consultants were entitled to "significant weight."

**Evaluating Medical Opinion**

The opinion of an examining physician is entitled to greater weight than the opinion of a non-examining physician. Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990). An ALJ must

FINDINGS AND RECOMMENDATION - 10

provide clear and convincing reasons for rejecting the uncontradicted opinions of an examining physician, id., and must provide specific and legitimate reasons for rejecting opinions of an examining physician that are contradicted by another physician. Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).

**Analysis**

Before turning to his other contentions, I note that Plaintiff appears to argue that Dr. Landfield's RFC allowing him to "rarely" stoop and crouch was less restrictive than the ALJ's RFC which would allow him to "occasionally" perform these activities. Assuming that this interpretation is correct, Plaintiff cannot complain of the ALJ's assignment of more stringent stooping and crouching restrictions than were set out in Dr. Landfield's opinion, because greater limitations indicate more substantial impairment and increase the likelihood that a claimant will be found to be disabled. In addition, omission of a bending limitation from the ALJ's RFC assessment constituted at most harmless error, because the jobs that ALJ found Plaintiff could perform do not include a bending requirement. As the Commissioner notes, stooping, kneeling, crouching, and crawling are defined as a form of bending for the purposes of disability analysis, see SSR 85-15, and the Dictionary of Occupational Titles (DOT) provides that these activities are "Not Present" for the garment sorter, marker II, small product assembler, and food assembler jobs which the ALJ concluded Plaintiff could perform.

Dr. Landfield's conclusion that Plaintiff could sit for 8 hours during an 8 hour work day with "reasonable breaks every five minutes to change positions" presents a more significant issue. In order to be accurate, an ALJ's vocational hypothetical presented to a VE must set out all of a claimant's impairments and limitations, and a VE's conclusion that a claimant can work does not have evidentiary value if the vocational hypothetical is not supported by the record.

FINDINGS AND RECOMMENDATION - 11

E.g., Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). Here, though the ALJ noted that Dr. Landfield had opined that Plaintiff needed reasonable breaks every five minutes in order to change position, he did not expressly accept or reject this portion of Dr. Landfield's opinion or expressly include it in his own RFC assessment or in a vocational hypothetical posed to the Vocational Expert (VE). Under these circumstances, it is not possible to reasonably determine whether the ALJ erred in excluding this limitation from his RFC assessment. Moreover, in the absence of relevant VE testimony, it is not possible to determine whether, if the ALJ erred in omitting that limitation, the omission was harmless.

Without determining the correctness and impact of the omission of Dr. Landfield's opinion concerning Plaintiff's need for frequent breaks to change positions while sitting, it is not possible to determine whether the ALJ's ultimate conclusion that Plaintiff was not disabled is supported by substantial evidence and free from legal error. This action should therefore be remanded for further proceedings to resolve this uncertainty. On remand, an ALJ should explicitly accept or reject Dr. Landfield's opinion concerning Plaintiff's need for "reasonable breaks" to change sitting position every five minutes, and should reexamine Plaintiff's ability to perform "other work" at step five if that is appropriate in light of that opinion.[2] For the reasons discussed below, Plaintiff's credibility and the credibility of his brother, Michael Mason, should also be addressed on remand.

2. **ALJ's Credibility Determinations**

A. **Plaintiff's Credibility**

---

[2] If an ALJ determines on remand that the sitting limitation Dr. Landsfield imposed was ambiguous, further inquiry will be required. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (ALJ required to conduct "appropriate inquiry" to resolve ambiguous evidence).

Where, as here, a claimant produces medical evidence of an underlying impairment that is reasonably expected to produce some degree of the symptoms alleged and there is no affirmative evidence of malingering, an ALJ must provide "clear and convincing reasons" for an adverse credibility determination.  Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006).

As noted above, the ALJ found that Plaintiff was not credible to the extent that his testimony differed from the ALJ's assessment of his RFC.  Plaintiff contends that this conclusion reflects an improper "cart before the horse" analysis, and argues that the ALJ additionally failed to provide sufficient reasons for rejecting his testimony.

Most of the decisions I have reviewed during the past several years have included an ALJ's finding that a claimant "is not credible to the extent his testimony is inconsistent with the RFC."  I have usually found that the ALJ has not used this "boilerplate" statement to describe the procedure used to evaluate the claimant's credibility or to explain why a claimant's testimony has been found less than wholly credible, but instead has simply indicated the degree to which the ALJ has found that a Plaintiff's statements are not wholly credible.

In the present action, the ALJ did not assess Plaintiff's RFC before he evaluated his credibility.  Instead, he simply failed to provide any reasons for discounting Plaintiff's credibility.  The Commissioner contends that, because the ALJ asserted that he had carefully considered the evidence,  I can reasonably infer that he found that Plaintiff and Plaintiff's brother were not credible "based on the same reasons, that is based on evidence he discussed in his decision."  Defendant's Reply Memorandum at 14.  I disagree.  An ALJ rejecting a claimant's testimony must do more than simply affirm that his review of the record has been careful: He

must support an adverse credibility determination with "clear and convincing reasons" for concluding that the claimant was not wholly credible. See id..

Here, the ALJ did not explicitly link any of his discussion of the record to his credibility determination. Arguably, some of the evidence that he cited would support an adverse credibility determination. For example, the ALJ's reference to Plaintiff's ability to dress himself, prepare his breakfast, go for walks, talk on the telephone, unload the dishwasher, vacuum, mow the lawn, drive, shop, read, and nap as support for an unstated conclusion that Plaintiff's activities of daily living were inconsistent with the degree of impairment he alleged. However, the ALJ also referred to other evidence in the record that arguably supported Plaintiff's allegations, and I simply cannot determine with confidence what evidence the ALJ thought undercut Plaintiff's credibility.

This much is clear: The formulaic assertion that a claimant's testimony is incredible to the extent that it differs from an RFC assessment is inadequate if an ALJ does not provide sufficient reasons supporting a finding that a claimant is not wholly credible. E.g., Allen v. Astrue, 2012 WL 2921454 at 8 (D. Or. 2012) ("boilerplate" statement that claimant is not credible to extent testimony is inconsistent with RFC is inappropriate if reasons for discounting testimony are not provided). In addition, it is clear that a finding of disability would be required if Plaintiff's testimony were credited. The ALJ's error in evaluating Plaintiff's credibility therefore was not harmless.

B. **Lay Witness Testimony**

As noted above, Michael Mason, Plaintiff's brother, submitted a third party witness statement indicating that Plaintiff appeared to be in pain most of the time and that his activities were significantly limited by his impairments. The ALJ summarized Michael Mason's

statements, but did not separately indicate his reasons for concluding that his statements, like Plaintiff's, were not credible to the extent they were inconsistent with the ALJ's RFC assessment.

An ALJ must provide reasons that are "germane" for rejecting lay witness testimony. <u>Molina v. Astrue</u>, 674 F.3d 1104, 1114 (9th Cir. 2012). The Commissioner notes that this requirement is satisfied if an ALJ has provided clear and convincing reasons for rejecting a claimant's subjective complaints and the lay witness testimony merely reiterates the claimant's allegations. <u>See id.</u> at 1117; <u>Valentine v. Commissioner</u>, 574 F.3d 685, 694 (9th Cir. 2009). However, this observation is not relevant here because the ALJ did not provide adequate reasons for rejecting Plaintiff's own testimony, and Michael Mason added arguably significant observations to Plaintiff's description of his impairments and activities.

The Commissioner notes that the ALJ observed that, though Michael Mason asserted that Plaintiff appeared to be in pain most of the time, he reported that Plaintiff had driven him from Salem to Portland. The Commissioner contends that this was a germane reason for finding that Michael Mason was not credible because an ALJ may reject lay witness statements that are inconsistent with a claimant's activities.

This contention fails for two reasons. First, the ALJ did not explicitly cite this, or any other evidence in the record, as a basis for discounting Michael Mason's testimony. Second, the ability to drive from Salem to Portland is not inconsistent with Michael Mason's statements concerning Plaintiff's functional capacity or his observation that Plaintiff appeared to be in pain most of the time.

C. **Further Proceedings Required**

Rejected evidence should be credited, and an action should be remanded for an award of benefits, if an ALJ has failed to provide legally sufficient reasons for rejecting the evidence, no outstanding issues remain for resolution, and it is clear from the record that an ALJ would be required to find a claimant disabled if the evidence were credited.  Harman v. Commissioner, 211 F.3d 1172, 1178 (9th Cir. 2000) see also, Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995) (remand for award of benefits appropriate if claimant's testimony rejected without sufficient support and testimony would establish disability if accepted).  Two of these requirements are satisfied here: The ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's testimony and the lay witness statements submitted by Plaintiff's brother, and a finding of disability would be required if that evidence were credited.  However, uncertainty as to the ALJ's analysis of Dr. Landfield's assessment of Plaintiff's ability to sit is an issue that requires further proceedings.  Those further proceedings should include reassessment of the credibility of Plaintiff and Plaintiff's brother, Mark Mason.  See, e.g., Harman, 211 F.3d at 1178 (remand for further proceedings appropriate if outstanding issue must be resolved before determination of disability can be made).

3. **Vocational Testimony and the DOT**

Plaintiff contends that the ALJ erred in concluding that he could perform "other work" at step five of his analysis because the requirement that Plaintiff avoid jobs requiring "normal hearing levels" was ambiguous and elicited VE testimony that was not supported by the DOT.  He also contends that the ALJ erred in relying on the VE's testimony in concluding that the jobs in question would not cause further hearing damage.  Plaintiff argues that the VE was not

FINDINGS AND RECOMMENDATION - 16

qualified to testify as to the potential for further hearing damage that particular work might cause.

These contentions fail. At the hearing, the ALJ told the VE that he needed to consider jobs that did not require "the individual to have ongoing communication with coworkers or the general public." He added that this meant that the occupation should not require employees to be "constantly communicating" with each other. "Constantly" is a term defined in the DOT, as are the levels of talking and hearing required to perform the jobs in question. There is no basis for concluding that the hearing limitations the ALJ cited was ambiguous or that the VE was not qualified to testify as to whether particular jobs were consistent with the limitations imposed.

There is also no basis for concluding that the ALJ erred in relying on the VE's testimony in determining whether the jobs at issue would cause further damage to Plaintiff's hearing. Under the DOT, the jobs that the ALJ specified at step five are rated as Noise Level 3, which is described as the moderate level of noise typically encountered in department stores, grocery stores, light traffic, and fast food restaurants during off-hours. See Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, U.S. Dept. Of Labor, 1993, Appendix D (Environmental Conditions) at D-2. There is no basis for concluding that the ALJ could not rely on the VE's testimony that the jobs in question would not cause further hearing damage. See Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (VE's recognized expertise provides necessary foundation for VE's testimony).

## Conclusion

For the reasons set out above, a judgment should be entered REVERSING the decision of the Commissioner and REMANDING this action to the Agency for further proceedings. On remand, an ALJ should be instructed to directly address the limitation on sitting to which Dr.

FINDINGS AND RECOMMENDATION - 17

Landfield opined, either reject or accept that limitation, and determine whether the jobs specified in ALJ Madden Jr.'s decision are appropriate in light of that determination. On remand, the ALJ should also revisit the question of the credibility of Plaintiff and his brother Michael Mason. If these witnesses are again found to be less than wholly credible, explicit reasons for that finding should be provided.

### Scheduling Order

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due June 10, 2013. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 23rd day of May, 2013.

      /s/ John Jelderks  
John Jelderks  
U.S. Magistrate Judge